IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RAY LOUIS JACKSON,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | CV 17-21-GF-JTJ<br><br>**ORDER** |

Plaintiff Ray Jackson (Mr. Jackson) appeals the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, after a hearing before an administrative law judge (ALJ). For the reasons set forth below, Mr. Jackson's Motion for Summary Judgment is granted in part and denied in part, and his claim is remanded to the

1

Commissioner to have the ALJ discuss whether Mr. Jackson has the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.

## I. FACTS AND PROCEDURAL HISTORY

Ray Louis Jackson brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner denying his application for disability benefits. Mr. Jackson filed his application for disability insurance benefits on February 21, 2014, alleging a disability onset date of May 15, 2007 (Doc. 7 at 140). Mr. Jackson's claimed that the following conditions limit his ability to work: hypopituitarism, narcolepsy, depression, peripheral neuropathy, high blood pressure, acid reflux, pre-diabetic, and atrial fibrillation." (*Id*. at 158). Mr. Jackson's date last insured is December 31, 2013. (*Id*. at 151). Mr. Jackson's date of birth is February 12, 1958. Mr. Jackson was 56 years old when he filed his application for benefits and he is currently 59 years old. (*Id.* at 65).

Mr. Jackson's claim was denied initially and on reconsideration, and he filed a timely request for a hearing before an ALJ. (Doc. 7 at 97). An ALJ conducted a hearing on May 14, 2015, (*Id.* at 30-63) and later denied Mr. Jackson's application for benefits in a July 10, 2015 decision. (*Id.* at 11-29).

Mr. Jackson timely requested that the Commissioner review the ALJ's

decision on September 14, 2015. (*Id.* at 10). The Appeals Council for the Commissioner denied Mr. Jackson's request for review on January 11, 2017, making the ALJ's decision the Commissioner's "final decision." (*Id.* at 1-9).

Mr. Jackson timely filed a complaint on March 14, 2017, seeking judicial review of the Commissioner's decision. (Doc. 1). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). The parties consented to the undersigned conducting all further proceedings in this matter. (Doc. 9). The Great Falls Division of the District of Montana is the proper venue because Mr. Jackson resides in Cascade County, Montana. (Doc. 1 at 2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

Mr. Jackson filed an opening brief on July 14, 2017, requesting that the Court reverse the Commissioner's decision and remand for an immediate award of benefits or, in the alternative, remand for a further hearing. (Doc. 12). The Commissioner filed a response brief on August 18, 2017. (Doc. 13). Mr. Jackson filed a reply brief on August 28, 2017. (Doc. 14). The motion is ripe for decision.

## II. STANDARD OF REVIEW

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1

3

(9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Id.* at 1193 (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156). Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence

4

that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## III. BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of SSA*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and the Commissioner bears

the burden of proof at step five. *Id.* at 954. The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id.*

## IV. BACKGROUND

### A. ALJ's determination

At step one, the ALJ determined that Mr. Jackson had not engaged in substantial gainful activity since May 15, 2007, the alleged onset date, through his date last insured of December 31, 2013. (Doc. 7 at 16). At step two, the ALJ found that Mr. Jackson has the following severe impairments: narcolepsy and peripheral

neuropathy. (*Id*. at 16). At step three, the ALJ found that Mr. Jackson did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (*Id*. at 18).

Before considering step four, the ALJ assessed Mr. Jackson as having had the residual functional capacity (RFC), through the date last insured, to lift, carry, push and pull ten pounds frequently and twenty pounds occasionally; walk and stand six hours in an eight hour workday and sit six hours in an eight hour day; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; and needed to avoid concentrated exposure to extreme temperatures and all hazards, including wet, slippery, uneven surfaces, unprotected heights, and dangerous machinery. (*Id*. at 18-19).

At step four, the ALJ determined that with his RFC, Mr. Jackson was capable of performing past relevant work as a teacher-trainer/department head through his date last insured. (*Id*. at 23). Therefore, the ALJ determined that Mr. Jackson has not been under a disability since May 15, 2007, the claimed onset date of his disability, through December 31, 2013, the date last insured. (*Id*.).

### B. Mr. Jackson's Position

Mr. Jackson argues the Court should reverse the Commissioner's decision and remand the case to the Commissioner for the immediate award of benefits or

further hearing because:

1. The ALJ erred in disregarding Mr. Jackson's testimony concerning pain, fatigue, and limitations because the reasons the ALJ provided for doing so are not supported by substantial evidence. (Doc. 12 at 7-12);

2. The ALJ erred in determining that the Claimant has the residual functional capacity to perform substantial gainful activity because this determination is not supported by substantial evidence. (Doc. 12 at 13-16).

C. **The Commissioner's Position**

The Commissioner argues that the Court should enter summary judgment in her favor because:

1. The ALJ determination that Mr. Jackson's allegations of total disability were not credible was not erroneous because it is supported by substantial evidence. (Doc. 13 at 4-13);

2. The ALJ's RFC for Mr. Jackson was not erroneous because it is supported by substantial evidence. (*Id.* at 13-14).

V. ANALYSIS

A. **The ALJ's Credibility Determination**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

8

(citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (citing *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002). At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result

plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). As set forth in SSR 96-7p, it is not enough that "reasons" are provided–they must be clearly expressed and convincing in the sense that they are based on the record.

When evaluating a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id.* (citing *Morgan v. Comm'r of SSA*, 169 F.3d 595, 600 (9th Cir. 1999)).

Mr. Jackson argues that the ALJ's adverse credibility determination is erroneous because the following reasons given for discounting his symptom testimony

10

were not supported by substantial evidence: (a) Mr. Jackson's inconsistent statements; (b) Mr. Jackson failing to undergo a polysomnogram as recommended by his physician and gaps in his treatment; (c) Mr. Jackson's activities of daily living.

### 1. Inconsistent Statements

The ALJ discredited Mr. Jackson's symptom testimony because she found numerous inconsistencies in his testimony. Mr. Jackson's statement that he could not concentrate (Doc. 5 at 198) was inconsistent with Mr. Jackson writing a white paper for work in 2009 (*Id.* at 37); Mr. Jackson's statement that he did not stay in touch with his family (*Id.* at 198) was inconsistent with his statement that he sees his son every couple of weeks (*Id.* at 197); and Mr. Jackson's statement that he isolates himself and tries to avoid people (*Id.* at 198) is inconsistent with his reports to a medical provider that he was volunteering at a university helping with a basketball team and giving talks to students (*Id.* at 607, 609).

Mr. Jackson argues that he testified that the white paper was something "he could only do when he could do it, and there were times he could not do it because of being unable to concentrate or actually falling asleep" and therefore this limited activity "is not inconsistent with disability." (Doc. 12 at 9). In relation to staying in touch with his family, Mr. Jackson argues that there was an intervening "falling out" between he and his son and as such both statements may have been true at different

11

times and further, that whether he was in touch with his son "does not have a bearing on [his] report of symptoms." (Doc. 14 at 6). Finally, in relation to helping with the basketball team and giving talks to students, Mr. Jackson argues that Dr. Anderson, his physician who made the notes reflecting these activities, made the notes as a result of a misunderstanding about a conversation Mr. Jackson had with the basketball coach at the university. (Doc. 12 at 9).

The Court determines that there is substantial evidence supporting the ALJ discrediting Mr. Jackson's symptom testimony based upon these inconsistencies. Initially, in relation to the white paper, Mr. Jackson reported that he could not concentrate yet he was, in fact, able to write the white paper, which required concentration to complete.

Next, Mr. Jackson reported in the same "Function Report - Adult" form that he and his attorney completed on August 27, 2014, that he was isolated from his family and also that he was "seeing his son every two weeks." (Doc. 5 at 196, 198, 200). At the May 14, 2015 hearing before the ALJ, Mr. Jackson testified he and his son had a falling out after Mr. Jackson had moved to Montana in 2010. (*Id.* at 47-48). The Court concludes that the substantial evidence supports the ALJ's determination that Mr. Jackson's statements about his contact with his son was inconsistent. Furthermore, the Court determines that ALJ rationally viewed Mr. Jackson's

inconsistent statements about his contact with his son as having a bearing on Mr. Jackson's report of symptoms because the Function Report-Adult in which Mr. Jackson provided these inconsistent answers was inquiring about whether there had been "any changes in activities since the illnesses, injuries or conditions began." (*Id.* at 198).

Finally, although Mr. Jackson testified that Dr. Anderson was mistaken about what transpired between him and the university basketball coach, the ALJ is not required to accept his explanation as true because the ALJ is tasked with resolving conflicts in the evidence. Furthermore, Dr. Anderson made two separate entries on two separate dates about Mr. Jackson helping with the basketball team and giving talks to students. Dr. Anderson's first entry was made on November 23, 2010, and it states that "[Mr. Jackson] also has been asked to do some volunteer work helping coach the University of Great Falls basketball team." (*Id*. at 607). Dr. Anderson's next entry was on February 14, 2011, and it states that "He is doing some volunteer work for the University of Great Falls helping with the basketball team and giving some talks to students." (*Id*. at 609). Although Mr. Jackson claims Dr. Anderson is mistaken, there is substantial evidence supporting the ALJ's determination that Mr. Jackson's statements to Dr. Anderson were inconsistent with his statement that he isolates himself and tries to avoid people.

## 2. Activities of Daily Living

The ALJ determined that Mr. Jackson's report of being able to perform "activities of daily living" undermined his credibility. (Doc. 7 at 22). Mr. Jackson argues that it was error for the ALJ to do so because the ALJ failed to make specific findings related to the daily activities and their transferability to the workplace. (Doc. 12 at 12)

A review of the ALJ's decision reveals that the ALJ found that Mr. Jackson's daily activities demonstrated "a good ability to act appropriately and communicate effectively in both personal and social situations," and his activities further demonstrated that he was able to engage in activities that required "good concentration, persistence, and pace such as driving, using a computer, independently managing his finances, applying for technical jobs, and writing a paper." (Doc. 7 at 22). The Court determines that the ALJ did not err because the activities the ALJ described are supported by substantial evidence, and they contradict Mr. Jackson's statements of being isolated, being unable to sustain any activity, being unable to concentrate, and being unable to complete tasks. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (daily activities may form the basis of an adverse credibility determination where the claimant's activities contradict his other testimony).

### 3. Polysomnogram

The ALJ also determined that Mr. Jackson's failure to undergo a polysomnogram as a physician suggested was a reason for rejecting Mr. Jackson's credibility. (*Id.* at 21). The ALJ stated that "[i]f his symptoms of fatigue, falling asleep so easily, and inability to sustain any activity were as severe and limiting as he had alleged, one would expect that he would have found a way to follow up with treatment recommendations." (*Id.*).

SSR 96-7 provides that an ALJ "must not draw any inference about an individual's symptoms and functional effects from a failure to seek or pursue regular medical treatment with first considering any explanations . . . that may explain . . . failure to seek medical treatment." The inability to pay is one such explanation. SSR 96-7. Mr. Jackson argues that the ALJ erred because she failed to consider Mr. Jackson's explanation for not undergoing the polysomnogram.

The ALJ brushed aside Mr. Jackson's explanation of limited finances for not undergoing the polysomnogram by stating that "one would expect that he would have found a way to follow up with treatment recommendations." The ALJ did not articulate how Mr. Jackson "would have found a way" to pay for the polysomnogram and the ALJ also cited no evidence from which it could be inferred that Mr. Jackson "would have found a way" to pay for the polysomnogram. Therefore, the Court

15

concludes that substantial evidence does not support this reason for discrediting Mr. Jackson's symptom testimony. However, because substantial evidence did support the ALJ's findings of "inconsistent statements" and "activities of daily living" as reasons for discrediting Mr. Jackson's symptom testimony, this error was harmless. *See Batson v. Comm'r of SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's reasons for disbelieving a claimant's testimony, the error was harmless where the record supported other reasons).

### B. The ALJ's Assessment of Mr. Jackson's RFC

#### 1. Ability to Sustain Work Activities

SSR 96-8p provides that in assessing a claimant's RFC the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e. eight hours per day, for five days per week, or an equivalent work schedule)." Mr. Jackson argues that the ALJ erred in failing to provide such a discussion in her decision and further erred in assessing his RFC because substantial evidence fails to support a finding that he can perform sustained work activities. (Doc. 12 at 13-14). The Commissioner did not address Mr. Jackson's argument that the ALJ failed to discuss Mr. Jackson's ability to perform sustained work activities as SSR 96-8p requires, but rather argued that the ALJ's RFC

16

assessment was not erroneous because it is supported by substantial evidence. (Doc. 13 at 13-14).

SSRs, according to the governing regulations, "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" of the SSA. 20 C.F.R. § 402.35(b)(1); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532 (1984) (noting the function of SSRs). "SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n. 2 (9th Cir. 2005)). SSRs do not carry the "force of law," but they are binding on ALJs nonetheless. *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 & n. 6 (9th Cir. 1989).

Here, the ALJ's decision fails to provide any discussion of Mr. Jackson's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis as SSR 96-8p requires, and the failure to do so constitutes legal error.

### 2. Combined Effect of Mr. Jackson's Impairments

Mr. Jackson argues that the ALJ failed to consider the combined effect of his multiple impairments in assessing his RFC. (Doc. 12 at 14-15). The Commissioner agues that the ALJ considered all of Mr. Jackson's impairments that she found to be

17

credible in assessing his RFC. (Doc. 13 at 13-14).

A review of the record reveals that the ALJ considered Mr. Jackson's claimed impairments and determined the extent to which they were credible and consistent with the objective medical evidence and based upon these determinations assessed Mr. Jackson's RFC. (Doc. 5 at 19-23). Although Mr. Jackson would have assessed the evidence differently than did the ALJ, that does not establish error. Rather, the test is whether substantial evidence supports the ALJ's assessment of Mr. Jackson's RFC. The Court determines that it does because there are numerous conflicts in the evidence concerning the limiting effect of Mr. Jackson's credible impairments. As such, the ALJ did not err in considering the combined effect of Mr. Jackson's impairments.

### 3. Record as a Whole

Mr. Jackson argues that the ALJ failed to consider the record as a whole, but rather mischaracterized the evidence to justify her assessment that Mr. Jackson's RFC rendered him able to perform past relevant work. (Doc. 12 at 16). The Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence and the ALJ should therefore be affirmed. (Doc. 13 at 13-14).

The Court determines that the record as a whole contains evidence that both supports and detracts from Mr. Jackson's claim that he is disabled, and that substantial evidence supports the ALJ's assessment of Mr. Jackson's RFC.

## C. Remand for Further Administrative Proceedings

As discussed above, the ALJ committed legal error when she failed to discuss whether, as SSR 96-8p requires, Mr. Jackson has the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Mr. Jackson argues that his claim should therefore be remanded to the Commissioner with instructions to award him benefits. (Doc. 12 at 16-17). The Commissioner argues that because there are serious questions about whether Mr. Jackson is disabled the Court, if determines there was error, should remand for further proceedings.

When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits. *Leon v. Berryhill*, 874 F.3d 1130, 1132-33 (9th Cir. 2017) (citing *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014). Where an ALJ improperly rejects a claimant's pain testimony as incredible without providing legally sufficient reasons, the reviewing court may grant a direct award of benefits when certain conditions are met. *Id.* Here, the Court has not determined that the ALJ erred in rejecting Mr. Jackson's testimony. Rather, the Court has determined that the ALJ erred in failing to provided the discussion SSR 96-8p requires. Therefore, remand for further administrative proceedings is the appropriate remedy as opposed to instructing the Commissioner to award Mr. Jackson benefits.

## VII. CONCLUSION

The ALJ committed legal error in failing to discuss in her decision whether Mr. Jackson has the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis as SSR 96-8p requires.

Therefore, the undersigned issues the following:

**ORDER**

1. Mr. Jackson's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

2. Mr. Jackson's claim is remanded to the Commissioner with instructions to have the ALJ discuss whether Mr. Jackson has the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis as required by SSR 96-8ps, and to have the ALJ determine whether Mr. Jackson is entitled to benefits based upon that discussion.

Dated this 19th day of December, 2017.

John Johnston
United States Magistrate Judge